**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ignacio Xalamihua,<br><br>        Plaintiff,<br><br>v.<br><br>GGC Legacy Janitorial Services LLC, et al.,<br><br>        Defendants. | No. CV-23-00009-TUC-BGM<br><br>**ORDER** |

Before the Court is Plaintiff's Motion for Entry of Default Judgment Against Defendants GGC Legacy Janitorial Services, LLC, and George Johnson. (Doc. 23.) For the reasons that follow, the motion is granted and Plaintiff is awarded $3,060 in damages.

## BACKGROUND

From approximately October 31, 2022, through November 12, 2022, Plaintiff Ignacio Xalamihua worked for Defendants GGC Legacy Janitorial Services LLC (GGC Legacy) and George Johnson, an owner of GGC Legacy, as a night janitor cleaning grocery stores in Tucson, Arizona. (Doc. 1, ¶¶ 32-35.) Defendants hired Plaintiff as a full-time employee at a pay rate of $17.00 per hour. (*Id*. ¶ 36.) During the two weeks that Plaintiff worked for Defendants, he worked approximately sixty hours. (*Id*. ¶ 38.) Plaintiff was supposed to be paid weekly, but the only paycheck he received was returned for insufficient funds, and he failed to receive any other remuneration. (*Id*. ¶¶ 37-42, 45.) On or about November 12, 2022, Plaintiff left employment with Defendants because they failed to pay him for any of the work that he performed. (*Id*. ¶¶ 43-45.)

## PROCEDURAL HISTORY

On January 6, 2023, Plaintiff filed his complaint raising three claims for unpaid wages against Defendants GGC Legacy and George Johnson, among others. (*See* Doc. 1 at 10-14.) Plaintiff's claims involve: (i) unpaid minimum wages under the Fair Labor Standards Act (FLSA); (ii) unpaid minimum wages under the Arizona Minimum Wage Act (AMWA); and (iii) unpaid wages under the Arizona Wage Act (AWA). (*Id*. ¶¶ 58-70.) Nineteen days later, Plaintiff consented to Magistrate Judge Jurisdiction. (Doc. 7.)

On January 13, 2023, copies of a summons, complaint, and magistrate judge jurisdiction consent form were served upon GGC Legacy via its authorized agent. (Doc. 8.) Later the same day, George Johnson was personally served with the same process at his business. (Doc. 9.) Plaintiff failed to serve the remaining five defendants.

On March 8, 2023, Plaintiff filed an application for entry of default, requesting that the Clerk of Court enter default against the served Defendants. (Doc. 11.) Approximately one month later, the Court held a telephonic status conference, where it discussed the default judgment process with Plaintiff. (Doc. 14.) Shortly after the conference, Plaintiff voluntarily dismissed four of the five remaining unserved defendants. (Doc. 15.)

On July 21, 2023, a second telephonic status conference was held where the Court discussed Plaintiff's application for entry of default. (Doc. 19.) The Court instructed the Clerk of Court to enter default and Plaintiff to file a motion for entry of default judgment upon the Clerk's entry of default. (*Id*.) The Court noted that it would determine whether to set an evidentiary hearing once Plaintiff's motion was filed. (*Id*.) The same day, the Clerk entered default against Defendants. (Doc. 17.)

On July 24, 2023, the Court ordered Plaintiff to serve Defendants with a copy of his application for entry of default via mail or file an amended certificate of service stating that Defendants had been served as such. (Doc. 18.) Plaintiff had inadvertently indicated that Defendants were served with a copy of his application via email. (*See* Doc. 11 at 2.) Four days later, Plaintiff filed an amended certificate of service indicating that Defendants had originally been served with a copy of his application via First Class mail. (Doc. 20.)

On October 25, 2023, the Court instructed Plaintiff to file a motion for entry of default judgment within twenty-one days of its Order, which Plaintiff had previously failed to do. (Doc. 21.) The Court reminded Plaintiff that Defendants must be served with a copy of the motion as directed by the Federal Rules. (*Id.* at 3.) The Court also instructed Plaintiff to either serve the remaining unserved defendant or voluntarily dismiss her from the action. (*Id.*) Twelve days later, Plaintiff dismissed the remaining defendant and filed the motion for entry of default judgment at hand. (Docs. 22, 23.) This Order follows.

## LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The plaintiff may thereafter apply for entry of a default judgment by the Court. Fed. R. Civ. P. 55(b)(2). The Court may conduct an evidentiary hearing to determine the amount of damages, establish the truth of an allegation, or investigate any other matter. Fed. R. Civ. P. 55(b)(2)(B)-(D). In deciding whether to grant default judgment, the Court may consider: "(1) the possibility of prejudice to the plaintiff[;] (2) the merits of plaintiff's substantive claim[;] (3) the sufficiency of the complaint[;] (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect[;] and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Upon default, the factual allegations in the complaint are taken as true except those relating to the amount of damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

## DISCUSSION

Plaintiff brings the motion at hand requesting that the Court enter default judgment by arguing that he satisfies all seven *Eitel* factors and that he is entitled to liquidated statutory damages for Defendants' failure to litigate. (*See* Doc. 23 at 3-11.) The Court agrees with Plaintiff, analyzes its jurisdiction over the matter, weighs the seven *Eitel* factors, and then determines the amount of damages to which Plaintiff is entitled.

**I.      Jurisdiction Over Case and Parties**

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Subject matter jurisdiction involves a court's "power to adjudicate [a] case." *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89 (1998). Congress has authorized district courts to exercise subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 505 (2006). This power is known as federal question jurisdiction. *Arbaugh*, 546 U.S. at 513. Under 28 U.S.C. § 1367, Congress has also authorized district courts to exercise subject matter jurisdiction over state-law claims substantially related to a claim based on federal law. *Id*. at 506. This power is known as supplemental jurisdiction. *Id*.

Personal jurisdiction "is the power of a court to enter judgment against a person." *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007). There are two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Since *International Shoe v. Washington*, 326 U.S. 310 (1945), specific jurisdiction has become the focal point of jurisdictional theory. *Id*. at 924-25. "Specific jurisdiction exists when a case arises out of or relates to the defendant's contacts with the forum," *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (cleaned up); and it requires the satisfaction of three conditions, *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1171 (9th Cir. 2022). "First, the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum." *Ratha*, 35 F.4th at 1171 (cleaned up). "Second, the claim must be one which arises out of or relates to the defendant's forum-related activities." *Id*. (cleaned up). "And third, the exercise of jurisdiction must comport with fair play and substantial justice[.]" *Id*. (cleaned up). To effectuate jurisdiction over a defendant, the defendant must also be served with process under Federal Rule of Civil Procedure 4. *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986).

Plaintiff brings unpaid wage claims under the FLSA, AMWA, and AWA. (Doc. 1.) The Court has subject matter jurisdiction over Plaintiff's FLSA claim because it arises under the laws of the United States. *See* 28 U.S.C. § 1331. The Court has supplemental subject matter jurisdiction over Plaintiff's AMWA and AWA claims because the state law claims "are so related to" the federal FLSA claim "that they form part of the same case or controversy" under Article III of the Constitution. 28 U.S.C. § 1367(a). The Court has personal jurisdiction over GGC Legacy and Mr. Johnson because they have purposefully conducted business in Arizona, Plaintiff's wage claims arise out of Defendants' forum-related business activities, and Defendants have sufficient minimum contacts with Arizona such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. Venue is also proper because a substantial part of the events giving rise to Plaintiff's claims occurred in Pima County, Arizona. 28 U.S.C. § 1391(b)(2).

## II.   *Eitel* Factors Favor Default Judgment

A court's decision whether to enter a default judgment is a discretionary one. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see also Eitel*, 782 F.2d at 1471 (describing factors "which may be considered by court in exercising discretion as to the entry of default judgment"). In applying the *Eitel* factors, "the general rule is that well-pled allegations in the complaint regarding liability are deemed true[,]" and the district court "is not required to make detailed findings of fact." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). The Court concludes that six of seven *Eitel* factors weigh in favor of entering default judgment.

### A.   First, Fifth, Sixth, and Seventh *Eitel* Factors

In cases where the defendants have failed to participate in the litigation, the first, fifth, sixth, and seventh *Eitel* factors are easily addressed. *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *3 (D. Ariz. Mar. 27, 2020). The first *Eitel* factor weighs in favor of default judgment because denying Plaintiff's motion

will leave him "without other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). The fifth *Eitel* factor weighs in favor of default judgment because there is no dispute over material facts due to Defendants' failure to participate in the litigation. *See id.* at 1177 (ruling that "[u]pon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages."). The sixth *Eitel* factor weighs in favor of default judgment because Defendants were properly served with process, (*see* Docs. 8, 9), and it is unlikely that their failure to answer was the result of excusable neglect. *See Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (ruling that there was no excusable neglect when defendants were properly served with the complaint, notice of entry of default, and papers in support of the plaintiff's motion for entry of default judgment). Finally, although the seventh *Eitel* factor, which considers the policy favoring a decision on the merits, generally weighs against default judgment, the existence of Federal Rule of Civil Procedure 55(b) "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177. Therefore, the first, fifth, and sixth *Eitel* factors weigh in favor of default judgment, while the seventh *Eitel* factor is neutral.

### B. Second and Third *Eitel* Factors

The second and third *Eitel* factors—the merits of the substantive claims and the sufficiency of the complaint—are often "analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (cleaned up). Of all the *Eitel* factors, "courts often consider the second and third factors to be the most important." *Id.* (cleaned up). The Court concludes that Plaintiff states plausible claims under the FLSA, AMWA, and AWA, respectively.

#### 1. Plaintiff States FLSA Claim

The FLSA requires employers to pay minimum wages to nonexempt, i.e., hourly employees. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 894 (7th Cir. 2018) (citing 29 U.S.C. §§ 206-207). The FLSA's minimum wage provision entitles employees to a

wage "not less than $7.25 an hour." 29 U.S.C. § 206(a). To state a plausible minimum wage claim under the FLSA, a plaintiff must allege that his weekly wages fall below the statutory minimum. *Heck v. Heavenly Couture, Inc.*, No. 3:17-CV-0168-CAB-NLS, 2017 WL 4476999, at *4 (S.D. Cal. Oct. 6, 2017); *see also Alvarez v. IBP, Inc.*, 339 F.3d 894, 914-15 (9th Cir. 2003) (cleaned up) ("We have approved approximated awards where plaintiffs can establish, to an imperfect degree of certainty, that they have performed work and have not been paid in accordance with the FLSA.")

Plaintiff alleges that Defendants constitute "employers" and that he constitutes an "employee" under the FLSA. (Doc. 1, ¶¶ 10-12, 20.) He contends that Defendants hired him to work as a night janitor, cleaning grocery stores in Tucson, Arizona, for $17.00 per hour. (*Id*. ¶¶ 33, 35-36.) Plaintiff avers that Defendants agreed to pay him weekly and that he worked for approximately sixty hours over two weeks without being compensated. (*Id.* ¶¶ 37-42.) Plaintiff sufficiently states a claim for unpaid minimum wages under the FLSA.

### 2. Plaintiff States AMWA Claim

The AMWA is a state minimum wage statute that requires Arizona employees to be paid no less than $12 per hour in addition to yearly cost of living adjustments, beginning on or after January 1, 2021. A.R.S. § 23-363(B); *Peralta v. Custom Image Pros LLC, et al.*, No. CV-23-00358-PHX-JAT, 2023 WL 8455120, at *3 (D. Ariz. Dec. 6, 2023). To state claim under the AMWA, a plaintiff must allege that he was not paid the applicable minimum wage for the hours he worked. *Coe v. Hirsch, et al.*, No. CV-21-00478-PHX-SMM (MTM), 2021 WL 5634798, at *2 (D. Ariz. Dec. 1, 2021).

Plaintiff alleges that Defendants constitute "employers" and that he constitutes an "employee" under the AMWA. (Doc. 1, §§ 24-25.) He contends that Defendants hired him to work as a night janitor, cleaning grocery stores in Tucson, Arizona, for $17.00 per hour. (*Id*. ¶¶ 33, 35-36.) Plaintiff avers that Defendants agreed to pay him weekly and that he worked for approximately sixty hours over two weeks without compensation. (*Id*. ¶¶ 37-42.) Plaintiff sufficiently states a claim for unpaid minimum wages under the AMWA.

### 3. Plaintiff States AWA Claim

The AWA requires that employees in Arizona receive their wages in a timely fashion. A.R.S. § 23-351. To bring an AWA claim, a plaintiff must state that his employer failed to pay wages within a specific time. *Frey v. Allstate L. Firm PC*, No. CV-22-01053-PHX-DJH, 2023 WL 5590319, at *3 (D. Ariz. Aug. 29, 2023). The term "employer" is defined more narrowly under the AWA than it is under the FLSA or the AMWA. *Rosen v. Fasttrak Foods LLC*, No. CV-19-05292-PHX-DWL, 2021 WL 2981590, at *5 (D. Ariz. July 15, 2021). An employer is defined as "any individual, partnership, association, joint stock company, trust or corporation, the administrator or executor of the estate of a deceased individual or the receiver, trustee or successor of any of such persons employing any person." A.R.S. § 23-350(3). This definition does not authorize individual liability against the owners, officers, or directors of a corporate employer in a case where the claim is for the employer's wholesale failure to pay wages. *Rosen*, 2021 WL 2981590, at *5.

Plaintiff alleges that Defendant GGC Legacy is a limited liability company duly licensed to transact business in the state of Arizona. (Doc. 1, ¶ 8.) He contends that the company owns and operates GGC Legacy Janitorial Services, a commercial and residential janitorial and cleaning company in Maricopa County, Arizona. (*Id*. ¶ 9.) Plaintiff alleges that GGC Legacy hired him to work as a night janitor, cleaning grocery stores in Tucson, Arizona, for $17.00 per hour. (*Id*. ¶¶ 33, 35-36.) He states that the company agreed to pay him weekly and that he worked approximately sixty hours over two weeks without being compensated. (*Id*. ¶¶ 37-42.) Plaintiff sufficiently states a claim against Defendant GGC Legacy for unpaid wages under the AWA. Therefore, the second and third *Eitel* factors weigh in favor of entering default judgment.

### C. Fourth *Eitel* Factor

Under the fourth *Eitel* factor, the Court considers "the amount of money at stake in relation to the seriousness of [the d]efendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. "If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored." *Gemmel v. Systemhouse, Inc.*, No. CIV 04-198-TUC-CKJ, 2008

WL 65604, at *4 (D. Ariz. Jan. 3, 2008). Here, Plaintiff seeks unpaid minimum and standard wages owed under the FLSA, AMWA, and AWA, along with liquidated damages. (Doc. 1, ¶¶ 55-57.) Plaintiff asserts that he is entitled to $3,060 in total damages, not including post-judgment interest and reasonable attorney's fees and costs. (Doc. 23 at 9-11.) The Court finds the stated damages are not disproportionate or inappropriate based on Plaintiff working sixty hours without pay. The Court also finds that Plaintiff correctly indicates where his damages are engulfed by larger statutory awards. (*See* Doc. 23 at 9-11); *Valenzuela v. Esser*, No. CV 22-01180 PHX CDB, 2023 WL 2815548, at *7 (D. Ariz. Mar. 14, 2023), *report and recommendation adopted,* No. CV-22-01180-PHX-CDB, 2023 WL 2814078 (D. Ariz. Apr. 6, 2023) (ruling that "available legal opinions indicate that [a p]laintiff is entitled only to the maximum amount of damages under either the state or federal statute.") Therefore, the fourth *Eitel* factor, in addition to the first, second, third, fifth, and sixth *Eitel* factors, weighs in favor of entering default judgment, and the Court concludes that entry of default judgment is appropriate.

### III. Plaintiff Entitled to Damages

Having found entry of default judgment proper, the Court must determine Plaintiff's damages. *HTS, Inc. v. Boley*, 954 F. Supp. 2d 927, 947 (D. Ariz. 2013). In contrast to Plaintiff's other allegations, allegations pertaining to damages are not taken as true. *Geddes*, 559 F.2d at 560. Rather, Plaintiff is required to provide evidence of his damages, and the "damages sought must not be different in kind or amount from those set forth in the complaint." *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011). The Court may enter a default judgment without a damages hearing when "the amount claimed is a liquidated sum or capable of mathematical calculation." *HTS, Inc.*, 954 F. Supp. 2d at 947 (quoting *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981)). In determining damages, a court can rely on the plaintiff's declarations, *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003), and the court has "wide latitude" in determining the amount of damages to award, *James v. Frame*, 6 F.3d 307, 310 (9th Cir. 1993).

Plaintiff requests damages in the amount of $3,060, post-judgment interest, and permission to file a motion for attorney's fees and costs. (Doc. 23 at 11.) Plaintiff's request does not differ in kind from the damages he demanded in his complaint. (*Compare* Doc. 23 at 8-11 *with* Doc. 1, ¶¶ 61, 65, and 70.) The Court breaks down Plaintiff's damages by statutory claim to elucidate its award.

### A. FLSA Damages

Plaintiff asserts that his unpaid minimum wages under the FLSA are $435,[1] the product of 60 hours multiplied by the federal minimum wage of $7.25 per hour. (Doc. 23 at 6.) Plaintiff seeks liquidated damages for his FLSA claim. (*Id*. at 8-9.) Under the FLSA, "[a]ny employer who violates . . . section 206 or section 207 . . . shall be liable to the employee . . . in the amount of [his] unpaid minimum wages, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Plaintiff's unpaid minimum wages are $435, and he is entitled to another $435 as liquidated damages. As such, Plaintiff is eligible for $870 in liquidated damages under the FLSA.

### B. AMWA Damages

Plaintiff next asserts that his unpaid minimum wages under the AMWA are $768, the product of 60 hours multiplied by the Arizona minimum wage of $12.80 per hour. (Doc. 23 at 6.) Under the AMWA, "[a]ny employer who fails to pay the wages . . . required . . . shall be required to pay the employee the balance of the wages . . . , including interest thereon, and an additional amount equal to twice the underpaid wages[.]" A.R.S. § 23-364(G). Plaintiff's underpaid wages are $768, and he is entitled to an additional $1,536 as damages. As such, Plaintiff is eligible for $2,304 in damages under the AMWA.

### C. AWA Damages

Plaintiff also asserts that his unpaid wages under the AWA are $1,020, the product of 60 hours multiplied by his agreed upon wage of $17.00 per hour. (Doc. 23 at 6.) Under the AWA, "if an employer . . . fails to pay wages due any employee, the employee may recover . . . an amount that is treble the amount of the unpaid wages." A.R.S. § 23-355(A).

---

[1] Plaintiff miscalculates this amount as $439.50 in his motion. (*See* Doc. 23 at 6.)

Plaintiff's unpaid wages are $1,020, and he is entitled to three times that amount. As such, Plaintiff is eligible for $3,060 in damages under the AWA.

### D. Total Damages

Plaintiff is entitled only to the maximum amount of damages under either the state or federal statutes. *Valenzuela*, 2023 WL 2815548, at *7. He recognizes as much in his motion stating that his AMWA award engulfs his FLSA award and his AWA award engulfs his AMWA award. (*See* Doc. 23 at 9.) Plaintiff requests "total damages in the amount of $3,060 in trebled unpaid wages." (*Id.*) The Court finds that this demand accurately calculates the damages to which Plaintiff is entitled and that his request is supported by a Declaration. (*See* Doc. 23-1.) Accordingly, the Court awards Plaintiff $3,060 in damages.

Additionally, the Court finds Plaintiff's requests for post-judgment interest and permission to file a motion for attorney's fees and costs legally appropriate. *See* 29 U.SC. § 216(b); 28 U.S.C. § 1961(a). Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Entry of Default Judgment Against Defendants GGC Legacy Janitorial Services, LLC, and George Johnson (Doc. 23) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff is awarded $3,060 plus post-judgment interest against Defendant GGC Legacy Janitorial Services LLC, and that Defendants GGC Legacy Janitorial Services LLC and George Johnson shall be jointly and severally liable for $2,304 of that amount.

**IT IS FURTHER ORDERED** that Plaintiff shall have no later than 14 days after entry of Judgment to file an application for attorney's fees and costs under LRCiv 54.2.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in Plaintiff's favor and close this case.

Dated this 26th day of December, 2023.

Honorable Bruce G. Macdonald
United States Magistrate Judge